UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LUCAS ALVAREZ,

                         Petitioner,

v.

UNITED STATES OF AMERICA,

                         Respondent.

No. 08-CR-1192 (KMK)
No. 14-CV-2491 (KMK)

OPINION & ORDER

Appearances:

Lucas Alvarez
Middletown, NY
*Pro Se Petitioner*

Benjamin R. Allee, Esq.
U.S. Attorney's Office, Southern District of New York
White Plains, NY
*Counsel for Respondent*

KENNETH M. KARAS, District Judge:

      In July 2009, Lucas Alvarez ("Alvarez" or "Petitioner") pleaded guilty to two narcotics and firearms charges and was sentenced, in January 2010, to 151 months' imprisonment. In April 2015, the Court reduced Alvarez's sentence to 121 months' imprisonment, pursuant to 18 U.S.C. § 3582(c). Alvarez has filed a Petition, pursuant to 28 U.S.C. § 2255, to vacate, set aside, or correct his sentence. (Pet. (Dkt. No. 101).)[1] For the reasons stated herein, the Petition is denied.

I. Factual History

      On December 3, 2008, a grand jury returned Indictment S3 08-CR-1192 (the

---

[1] All record citations are to Case No. 08-CR-1192 (KMK), unless otherwise indicated.

"Indictment"), charging Petitioner and nine co-defendants with conspiring to distribute, and possessing with intent to distribute, heroin and cocaine from November 2007 to December 3, 2008 in and around Middletown, New York in 2008, in violation of 21 U.S.C. § 846. (Dkt. No. 1.) In particular, the Indictment alleged that Petitioner and his co-conspirators sold bundles of heroin, daily, to dozens of customers in various parking lots of retail stores and elsewhere on Middletown's streets. (Presentence Investigation Report ("PSR") ¶¶ 13–14 (Oct. 9, 2009).) The organization, which was led by Petitioner's brother, Gilbert Alvarez, maintained a dispatch phone to organize their heroin sales. (*Id.*) Customers would call the dispatch phone to arrange for a purchase of heroin. (*Id.* ¶ 14.) The dispatcher would provide the buyer a location, for example, the Walmart parking lot, to meet the runner. (*Id.*) On a good day, the so-called "Alvarez Organization" would gross up to $3,000. (*Id.*)

The investigation revealed that, in addition to assisting in the heroin distribution operation, Petitioner would assist in the cutting and distribution of cocaine in the Middletown area. (*Id.* ¶¶ 16, 18.) Indeed, Petitioner helped maintain the Alvarez Organization's "stash house." (*Id.* ¶ 15.C.) The investigation also revealed that Petitioner possessed two guns during and in relation to the narcotics conspiracy, one of which (an Intratec 9-millimeter submachine gun and 19 rounds of 9-millimeter ammunition) was found in Petitioner's possession when he was arrested and his residence was searched. (*Id.* ¶ 16.)

The investigation included wiretaps issued by this Court, including wiretaps of the dispatch phone and Petitioner's phone, which he used to distribute narcotics as part of the conspiracy. (*See* Letter of Benjamin Allee, Esq. to the Court ("Allee Sentencing Letter") (Nov. 30, 2009), at 3–4.) Law enforcement intercepted numerous calls involving Petitioner and others in the conspiracy. (*Id.*) For example, between October 16 and November 24, 2008, Petitioner

was intercepted several times speaking with co-conspirators, including his brother, about the receipt and delivery of drug orders from customers. (*Id.*)

On July 21, 2009, pursuant to a plea agreement (the "Plea Agreement"), Petitioner pleaded guilty to a two-count superseding information charging him with conspiring to distribute 5 kilograms and more of cocaine and 5 kilograms and more of heroin, in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(A), and 846, and with possessing a firearm and ammunition (the Intratec 9 discussed above) after having previously been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1). (*Id.* at 1–2.) Also, pursuant to the Plea Agreement, Petitioner agreed, among other things, that his sentencing range was 151–188 months' imprisonment, with a mandatory minimum of 120 months' imprisonment. (*Id.* at 2; PSR ¶¶ 90, 92.)

At sentencing, the Court adopted the calculation agreed to by the Parties and calculated by the Probation Department and imposed a sentence of 151 months' imprisonment. (Judgment (Jan. 11, 2010), at 2 (Dkt. No. 67).)

Petitioner subsequently filed the instant § 2255 Petition. (Dkt. No. 101.)

On April 8, 2015, the Court reduced Petitioner's sentence to 121 months' imprisonment, pursuant to 18 U.S.C. § 3582(c). (Dkt. No. 110.) Petitioner did not appeal his conviction or sentence and is currently serving his sentence.

## II. Discussion

### A. Standard of Review

#### 1. § 2255 Petitions

A prisoner in federal custody may move to vacate, set aside, or correct his sentence only "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the

3

sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a).[2] "Because collateral challenges are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack." *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010) (citation and quotation marks omitted). To prevail on a collateral attack of a final judgment under § 2255, a petitioner must demonstrate either the existence of a "constitutional error . . . or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)); *accord Cuoco v. United States*, 208 F.3d 27, 30 (2d Cir. 2000); *Rodriguez v. United States*, No. 11-CV-2957, 2013 WL 6171618, at *3 (S.D.N.Y. Nov. 25, 2013), *aff'd*, 679 F. App'x 41 (2d Cir. 2017).

In ruling on a § 2255 petition, the district court is required to hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Moreover, a hearing is not required where the petitioner's allegations are "vague, conclusory, or palpably incredible." *Gonzalez v. United States*, 722 F.3d 118, 130–31 (2d Cir. 2013) (quoting *Machibroda v. United States*, 368 U.S. 487, 495 (1962)). To justify a hearing, the petition "must set forth specific facts supported by competent evidence,

---

[2] 28 U.S.C. § 2255(a) provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

4

raising detailed and controverted issues of fact that, if proved at a hearing, would entitle [the petitioner] to relief." *Id.* at 131. Finally, because Petitioner is appearing pro se, the Court construes the Petition and his other submissions liberally and interprets them to raise the strongest arguments that they suggest. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001).

### 2. Ineffective Assistance of Counsel

Claims of ineffective assistance of counsel are evaluated under the framework set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). "First, the [petitioner] must show that counsel's performance was deficient." *Strickland*, 466 U.S. at 687. "Second, the [petitioner] must show that the deficient performance prejudiced the defense." *Id.*

A petitioner will not meet the first prong based solely on disagreements with counsel's strategy or advice. Indeed, there is a "strong presumption" that counsel's conduct fell within the vast spectrum of reasonable assistance, and it is the petitioner's burden to demonstrate "that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986) (citation omitted); *see also Tanveer v. United States*, No. 06-CR-1135, 2019 WL 430262, at *4 (S.D.N.Y. Feb. 4, 2019) (same). Thus, to satisfy this prong, a petitioner must demonstrate that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Strickland*, 466 U.S. at 687. In assessing counsel's conduct, the "court must judge his conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct,' and may not use hindsight to second-guess his strategy choices." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (quoting *Strickland*, 466 U.S. at 690).

To satisfy the second prong, Petitioner must establish that "there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *see also McNaught v. United States*, 646 F. Supp. 2d 372, 378 (S.D.N.Y. 2009) (same). Measuring this probability depends on the context of the alleged error. Where the challenge is to a guilty plea on the basis of ineffective assistance of counsel, the petitioner "can show prejudice by demonstrating a 'reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Lee v. United States*, 137 S. Ct. 1958, 1965 (2017) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)); *see also Chhabra v. United* States, 720 F.3d 395, 408 (2d Cir. 2013). "Where the [petitioner's] specific claim is that counsel has misled him as to the possible sentence which might result from a plea of guilty, the prejudice issue is whether the defendant was aware of actual sentencing possibilities, and if not, whether accurate information would have made any difference in his decision to enter a plea." *Chhabra*, 720 F.3d at 408 (citation and quotation marks omitted). In the sentencing context, a petitioner must demonstrate that, but for counsel's ineffective assistance, a different sentence was probable. *See United States v. Workman*, 110 F.3d 915, 920 (2d Cir. 1997).

B. Analysis

In his Petition, Petitioner asserts two grounds for vacatur of his conviction. First, he argues that his trial counsel was ineffective for failing to investigate "Petitioner's claim of innocence regarding the heroin distribution conduct." (Pet. 14; *see also* Pet'r's Supp. Mem. in Further Supp. of Mot. ("Pet'r's Mem.") 8–10 (No. 14-CV-2491, Dkt. No. 10).)[3] Second, he claims that his guilty plea was not knowing or voluntary, because his trial counsel was

---

[3] The Court will use the ECF-generated page when referring to Plaintiff's filings.

ineffective in conducting his investigation into Petitioner's claims of innocence and/or lied to Petitioner about investigating Petitioner's "claim of actual innocence." (Pet. 20.)

Petitioner's ineffective assistance claim runs as follows. On September 24, 2008, Petitioner's vehicle was deliberately damaged by Brian Daucher, who Petitioner alleges was a confidential informant. (*Id.* at 10.) The damage was a "rouse" [sic] to obtain Petitioner's cell phone number. (*Id.*) The ruse was carried out through a note left by Daucher on Petitioner's car. (*Id.*) The note was a confession by Daucher that he had damaged Petitioner's car and an offer to provide, via telephone, Daucher's insurance information to cover the damage. (*Id.*) Upon receiving the note, Petitioner claims he called Daucher and only spoke about the damage to his car and about making insurance arrangements. (*Id.* at 11.) Yet, according to Petitioner, the agent who swore out the affidavit in support of the interception order lied when he claimed that just before Daucher's arrest on September 24, 2008, Petitioner called Daucher to discuss a heroin transaction. (*Id.*) In Petitioner's view, had that statement been proven false, the intercept order would not have been authorized. (*Id.*)[4]

Counsel's alleged ineffectiveness enters the story because Petitioner claims that he asked counsel to investigate Petitioner's "claim of innocence regarding the heroin distribution conduct." (*Id.* at 14.)[5] Yet, according to Petitioner, counsel inaccurately asserted "that nothing in the discovery record supported that agents had done anything wrong." (*Id.*) Presumably,

---

[4] It bears noting that the affidavit in support of the intercept order contains other information about the scope of the telephone contact between Daucher and Petitioner on September 24, 2008. For example, the affidavit describes how Daucher had been in telephonic contact with both Petitioner and the dispatch phone before and after he purchased heroin and before and after he was arrested and found in possession of heroin. (Pet. 28–30.)

[5] Petitioner admits he sold cocaine. (Pet. 13.)

7

counsel is at fault for not being able to verify Petitioner's version of his conversation with Daucher.[6] According to Petitioner, counsel's supposedly deficient investigation (about Petitioner's own telephone conversations) "deprived Petitioner of an otherwise substantial ground of defense to the heroin distribution claims." (*Id*.) As Petitioner puts it: "The record here clearly reflects that some diligence by trial counsel would have yielded something material to Petitioner's actual innocence defense." (*Id.* at 17.)[7] And, because of counsel's poor investigative work, Petitioner's plea was not knowing or voluntary. (*Id.* at 19–20.)

To substantiate these claims, Petitioner cites the note left on his car, information about insurance work done on his car in September 2008 and statements supposedly to a friend of Petitioner's by Daucher confirming Petitioner's version of the events of September 24, 2008. (Pet'r's Mem. 9–10.) It bears noting that Petitioner does not claim to have told his counsel about this information before he pleaded guilty.

    1. Timeliness

Before considering the merits of the Petition, the Court first considers whether it is timely. "A motion by a federal prisoner for postconviction relief under 28 U.S.C. § 2255 is subject to a one-year time limitation that generally runs from 'the date on which the judgment of conviction becomes final.'" *Clay v. United States*, 537 U.S. 522, 524 (2003) (quoting 28 U.S.C. § 2255)). "[F]or purposes of [§] 2255 motions, an unappealed federal criminal judgment becomes final when the time for filing a direct appeal expires." *Moshier v. United States*, 402

---

[6] In support of this claim, Petitioner attaches a chronology of calls between him and Daucher on September 24, 2008. (Pet. 22.) However, Petitioner does not explain who created this log and, in fact, it appears it was Petitioner who did so.

[7] Petitioner claims, in the alternative, that trial counsel lied about not finding anything in discovery that verified Petitioner's version of his September 24, 2008 conversations with Daucher, (Pet. 14, 18), though he offers no proof to support that claim.

F.3d 116, 118 (2d Cir. 2005). Unless covered by an exception, where a petitioner fails to file a § 2255 motion until "more than one year after his conviction became final, his motion [i]s untimely." *Id*.

It is settled that the one-year period of limitation may be equitably tolled. *See Holland v. Florida*, 560 U.S. 631, 645 (2010); *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000). However, "[e]quitable tolling applies only in the rare and exceptional circumstance." *Smith*, 208 F.3d at 17 (citation, alteration, and quotation marks omitted). A petitioner must show that "extraordinary circumstances prevented him from filing his petition on time," and that he acted with "reasonable diligence throughout the period he seeks to toll." *Id.* (citing *Johnson v. Nyack Hosp.*, 86 F.3d 8, 12 (2d Cir. 1996)); *accord Holland*, 560 U.S. at 649 (requiring a petitioner to show that "he has been pursuing his rights diligently" and that "some extraordinary circumstance stood in his way and prevented timely filing" (citation and quotation marks omitted)). The burden of establishing that the extraordinary circumstance prevented a timely filing is on the petitioner. *See Valverde v. Stinson*, 224 F.3d 129, 133–34 (2d Cir. 2000).

Courts have found extraordinary circumstances to include "the confiscation of a prisoner's legal papers by a corrections officer shortly before the filing deadline," *id*. at 133, and an attorney's "egregious" failure to research or file a habeas petition despite "being specifically directed" to do so, *Baldayaque v. United States*, 338 F.3d 145, 152–53 (2d Cir. 2003). However, the mere fact that a petitioner is proceeding pro se and may be ignorant of the law is not a sufficient ground for equitable tolling. *See Smith*, 208 F.3d at 18 (holding that petitioner's pro se status does not establish sufficient ground for equitable tolling); *Ayala v. Miller*, No. 03-CV-3289, 2004 WL 2126966, at *2 (E.D.N.Y. Sept. 24, 2004) ("Neither a prisoner's pro se status, nor his lack of expertise, provides a basis for equitable tolling . . . ."); *Gillyard v. Herbert*, No.

9

01-CV-3427, 2003 WL 194692, at *3 (S.D.N.Y. Jan. 30, 2003) ("A petitioner's pro se status does not by itself merit equitable tolling." (italics omitted)); *Francis v. Miller*, 198 F. Supp. 2d 232, 235 (E.D.N.Y. 2002) ("Petitioner's further assertions — that he has limited education, is ignorant of the law and legal procedure, lacked funds to hire another attorney, had limited access to legal assistance that was available to prisoners, and was allowed limited use of the prison law library — also are not extraordinary circumstances that warrant equitable tolling for the extended period of delay in this case."). Similarly, a petitioner is not entitled to equitable tolling because he is incarcerated and had limited access to the internet — routine restrictions on prison life do not constitute extraordinary circumstances. *See Corrigan v. Barbery*, 371 F. Supp. 2d 325, 330 (W.D.N.Y. 2005) ("In general, the difficulties attendant on prison life, such as transfers between facilities, solitary confinement, lockdowns, restricted access to the law library, and an inability to secure court documents, do not by themselves qualify as extraordinary circumstances." (citation omitted)); *Lindo v. Lefever*, 193 F. Supp. 2d 659, 663 (E.D.N.Y. 2002) ("Transfers between prison facilities, solitary confinement, lockdowns, restricted access to the law library and an inability to secure court documents do not qualify as extraordinary circumstances." (citation omitted)); *cf. Brooks v. Olivarez*, No. 98-CV-134, 1998 WL 474160, at *2 (N.D. Cal. Aug. 5, 1998) ("Congress gave prisoners one year to get to federal court after their convictions became final . . . . That one year gives the prisoner plenty of time to get to federal court and leaves room for the inevitable delays in mail, unpredictable lockdowns, as well as interruptions in research and writing time common in prison."). In addition, the fact that a petitioner's late filing was unintentional does not rise to the level of an extraordinary circumstance meriting equitable tolling. *See Hickey v. Senkowski*, No. 02-CV-1437, 2003 WL 255319, at *4 (S.D.N.Y. Feb. 4, 2003) (holding that pro se petitioner's mistake did not constitute an extraordinary or unusual

circumstance meriting equitable tolling).

There is one exception to the one-year limitations period, which is that the petitioner is actually innocent. *See Schlup v. Delo*, 513 U.S. 298, 324 (1995). To establish a credible claim of actual innocence, a "petitioner must support his claim 'with new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial.'" *Doe v. Menefee*, 391 F.3d 147, 161 (2d Cir. 2004) (quoting *Schlup*, 513 U.S. at 324). In assessing whether new evidence is "reliable," as the Second Circuit explained in *Menefee*, "the habeas court must determine whether the new evidence is trustworthy by considering it both on its own merits and, where appropriate, in light of the pre-existing evidence in the record." *Id.* (citing *Schlup*, 513 U.S. at 327–28). Moreover, a court must "consider a petitioner's claim in light of the evidence in the record as a whole, including evidence that might have been inadmissible at trial." *Id*. at 162. This is because "[a]ctual innocence requires 'not legal innocence but factual innocence.'" *Murden v. Artuz*, 497 F.3d 178, 194 (2d Cir. 2007) (quoting *Menefee*, 391 F.3d at 162). To meet this high bar, it is not sufficient that the petitioner establish mere legal insufficiency. *See Menefee*, 391 F.3d at 162.

Applying these principles to this case, the Court concludes that the Petition is untimely. At the time Petitioner was sentenced, Rule 4(b) of the Federal Rules of Appellate Procedure provided that a criminal defendant had 14 days after the entry of judgment to file a notice of appeal with the district court. *See* Fed. R. App. P. 4(b)(1)(A)(i). Here, the judgment was entered on January 12, 2010 and Petitioner did not appeal. Thus, the Petition, which was not filed until April 10, 2014, more than four years after judgment was entered, is untimely.

Moreover, Petitioner has offered no allegations to suggest that he can establish that there was some extraordinary circumstance that prevented him from timely filing the Petition. He

does not, for example, allege that prison officials confiscated his legal papers or that an attorney retained or assigned to represent him failed to follow a court directive to file papers on his behalf. *See Valverde*, 224 F.3d at 133; *Baldayaque*, 338 F.3d at 152–53. Indeed, as to the former point, Petitioner appears to base his actual innocence claim, discussed further below, on documents that were in his residence since his arrest and never denied to him by any law enforcement officials. (*See* Pet'r's Mem. 9 (describing that a note left on his car, which Petitioner believe establishes that he was not involved in the conspiracy to sell heroin, was "boxed up with all the possessions in his residence after his arrest").) Thus, there are no exceptional circumstances that justify finding that the limitations period should have been tolled.

Petitioner seeks to avoid dismissal on timeliness grounds by making two arguments. First, Petitioner claims that his Petition was timely because it was within one year of when he discovered a note left on his car by Brian Daucher, information about Daucher's vehicle insurance, and statements supposedly made by Daucher. (Pet'r's Mem. 8–9.) According to Petitioner, this information collectively proves that the Government misrepresented key facts to the Judge who authorized interception of communications over Petitioner's phone because it backs up Petitioner's assertion that he did not discuss heroin distribution with Daucher, as the Government asserted in its application for the interception order, but that he only spoke with Daucher about insurance issues. Petitioner asserts that he filed his Petition within one year of discovering this information, which makes the Petition timely under 28 U.S.C. § 2255(f)(4).

Petitioner is wrong. "Under § 2255(f)(4), time begins when the prisoner knows (*or through diligence could discover*) the important facts, not when the prisoner recognizes their legal significance." *Locurto v. United States*, No. 10-CV-4589, 2018 WL 1157793, at *7 (E.D.N.Y. Mar. 2, 2018) (emphasis added) (citation, alteration, and quotation marks omitted);

*Bryant v. Thomas*, 274 F. Supp. 3d 166 (S.D.N.Y. Aug. 3, 2017) (same); *see also Matera v. United States*, 83 F. Supp. 3d 536, 547 (S.D.N.Y. 2015) (same). "[I]t is the Petitioner's burden to demonstrate why he was unable to discover the factual predicate of his claim before the date asserted." *Perez v. United States*, No. 01-CR-848, 2011 WL 2471274, at *2 (S.D.N.Y. June 18, 2011) (citation and quotation marks omitted). Petitioner does not meet that burden here, as he has known since well before his guilty plea about the existence of the note and, of course, the contents of his own conversations with Daucher. Indeed, he acknowledges that the note was in his constructive possession since before his arrest. (*See* Pet'r's Mem. 8–9.) Not only could he have informed his trial counsel about the whereabouts of the note, he could have had a friend retrieve the note for him far before 2013, which is when he first did so.[8] Section 2255(f)(4) "requires that Petitioner exercise reasonable diligence," *Locurto*, 2018 WL 1157793, at *8. Petitioner here did not exercise reasonable diligence and, accordingly, cannot invoke that provision to escape dismissal on timeliness grounds.

Petitioner's second argument to thwart the statute of limitations is that he is actually innocent. The entire basis for this claim is Petitioner's story, described above, about the note and his telephone conversations with Daucher on September 24, 2008 being solely about vehicle insurance. Simply put, even taking everything Petitioner says about the note and these calls as true, they hardly constitute *new* evidence, let alone evidence that proves Petitioner is factually innocent. The note has been in existence and available to Petitioner since September 24, 2008, as has been his knowledge about his conversations with Daucher. Beyond that, Petitioner's

---

[8] Petitioner recognized that he would "need someone to search . . . boxes [at his residence] for the note," and that in the "Fall of 2013, a friend . . . agreed to do so." (*See* Pet'r's Mem. 9–10.) Yet, Petitioner offers no reason why his friend could not have retrieved the note earlier, particularly given that the note, according to Petitioner, is so important to establishing his actual innocence.

claims might establish, at best, that the Government mischaracterized the conversations between Daucher and Petitioner in applying for the intercept order for Petitioner's phone. And, even assuming that the intercept order should not have been signed and that the fruits obtained therefrom should have been suppressed, it does not change the fact that the intercepts and other evidence established Petitioner's guilt. Again, to invoke this exception to the statute of limitations, Petitioner must establish that he is *factually* innocent; not that he is legally innocent. *See Menefee*, 391 F.3d at 162.[9]

Accordingly, the Petition is untimely.

### 2. Ineffective Assistance

Petitioner asserts his counsel was ineffective for failing to investigate his case and, in particular, for failing to substantiate Petitioner's version of the conversations between him and Daucher. (Pet. 13–14, 18–19; Pet'r's Mem. 8–10.) This claim has no merit. First, Petitioner offers no specifics about what was deficient about counsel's investigation. For example, Petitioner does not claim that he told counsel about the note left by Daucher, about his version of the telephone calls with Daucher on September 24, 2008, or that, in his view, Daucher was a confidential informant. And, beyond this, Petitioner does not offer any evidence or witnesses that he has since discovered that counsel failed to discover. Moreover, Petitioner does not explain how the note and merely presenting his version of the conversations with Daucher would have led to suppression of the interception order. In part, Petitioner fails in this regard because he has not even submitted the *full* affidavit submitted in support of the order. (*See* Pet. 26–30.)

---

[9] Even if Petitioner thinks he had a viable suppression motion, it bears noting that a defendant who "pleads guilty unconditionally while represented by counsel may not assert independent claims relating to [the deprivation of constitutional rights that occurred] prior to the entry of the guilty plea." *United States v. Coffin*, 76 F.3d 494, 497 (2d Cir. 1996); *see also United States v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997) (same).

Thus, the Court cannot determine whether excising the one reference to the calls between Petitioner and Daucher on September 24, 2008 would have been enough to prevail in a suppression motion. Put differently, Petitioner has not presented the Court with a basis to conclude, under the first *Strickland* prong, that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Strickland*, 466 U.S. at 687.

Second, Petitioner offers no credible explanation that a better investigation would have led Petitioner to elect to go to trial instead of pleading guilty. The Government proffers, as it did at Petitioner's guilty plea, that it had a plethora of evidence against Petitioner, including cooperator testimony. (*See* Letter of Benjamin Allee, Esq. to the Court (Dec. 28, 2018), at 6; Allee Sentencing Letter 1–5.) Thus, Petitioner has not satisfied the second prong of the ineffective assistance claim. Accordingly, this claim is rejected. *See Bethea v. Walsh*, No. 09-CV-5037, 2016 WL 258639, at *17 (E.D.N.Y. Jan. 19, 2016) ("As many courts in this circuit have observed, undetailed and unsubstantiated assertions that counsel failed to conduct a proper investigation have consistently been held insufficient to satisfy either *Strickland* prong." (citation and quotation marks omitted)); *Paige v. Lee*, 99 F. Supp. 3d 340, 349–50 (E.D.N.Y. 2015) ("Because [the petitioner's] claim of ineffective assistance of counsel based on failure to investigate is simply too vague and conclusory to state a proper ground for habeas relief under either *Strickland* prong, it must be dismissed as meritless."); *Powers v. Lord*, 462 F. Supp. 2d 371, 381 (W.D.N.Y. 2006) (noting that "undetailed and unsubstantiated assertions that counsel failed to conduct a proper investigation have consistently been held insufficient to satisfy either *Strickland* prong" (citation omitted)); *Lamberti v. United States*, No. 95-CV-1557, 1998 WL 118172, at *2 (S.D.N.Y. Mar. 13, 1998) (rejecting Sixth Amendment claim based on failure to

investigate where the allegations "do not identify counsel's asserted failings with any specificity or show how any different conduct might have changed the result"); *Madarikan v. United States*, No. 95-CV-2052, 1997 WL 597085, at *1 (E.D.N.Y. Sept. 24, 1997) (denying ineffective assistance claim based on failure to investigate or interview witnesses where petitioner's allegations of ineffective assistance were "conclusory, and [gave] no indication as to what exculpatory evidence may have been revealed by an investigation"); *United States v. Vargas*, 871 F. Supp. 623, 624 (S.D.N.Y. 1994) (rejecting ineffective assistance claim based on failure to investigate where there was "no evidence that avenues suggested by the client which might have altered the outcome were ignored").

### 3. Knowing and Voluntary Plea

The final claim in the Petition is that, because of counsel's supposed inability to uncover evidence that corroborated Petitioner's assertion that he did not join the heroin conspiracy (with his brother, among others), he did not knowingly and voluntarily plead guilty. (Pet. 19–20.) This is a frivolous claim. If Plaintiff believed he was innocent, he should not have pleaded guilty. He was in the best position to know about his September 24, 2008 conversations with Daucher and the note left by Daucher, let alone the extent of his role in the Alvarez Organization. Yet, Petitioner still elected to plead guilty, under oath. Given his admission of guilt, made in court and under oath, Petitioner's vague and self-serving statements to the contrary are insufficient to support his claim. *See Esparra v. United States*, No. 12-CR-844, 2016 WL 5107036, at *4 (S.D.N.Y. Sept. 19, 2016) (noting that "a petitioner's sworn statements in court that he understood the plea agreement carry a strong presumption of truthfulness that should carry over a later, bald assertion to the contrary" (citing *Blackledge v. Allison*, 431 U.S. 63, 74 (1977))); *see also United States v. Zakirov*, 305 F. Supp. 3d 438, 442 (E.D.N.Y. 2018) (rejecting motion to

16

withdraw guilty plea where his "claims [were] belied by [his] sworn statements during the plea hearing"). Accordingly, the claim is rejected.

### III. Conclusion

For the reasons discussed above, the Court dismisses the Petition.

As Petitioner has not made a substantial showing of the denial of a constitutional right, a Certificate of Appealability shall not be issued, *see* 28 U.S.C. § 2253(c)(2); *Lucidore v. N.Y. State Div. of Parole*, 209 F.3d 107, 111–12 (2d Cir. 2000), and the Court further certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this judgment on the merits would not be taken in good faith, *see Coppedge v. United States*, 369 U.S. 438, 445 (1962) ("We consider a defendant's good faith . . . demonstrated when he seeks appellate review of any issue not frivolous."); *Burda Media Inc. v. Blumenberg*, 731 F. Supp. 2d 321, 322–23 (S.D.N.Y. 2010) (citing *Coppedge* and finding that an appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith).

The Clerk of the Court is respectfully directed to enter a judgment in favor of Respondent, to mail a copy of this Opinion to Petitioner, and to close this case.

SO ORDERED.

DATED: March 29, 2019
White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE